UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ADAM JOHNSON,

        Plaintiff,

-against-

                      17 Civ. 1928 (CM)

CENTRAL INTELLIGENCE AGENCY,

        Defendant.

------------------------------------------------------------x

## MEMORANDUM ORDER REGARDING THE GOVERNMENT'S AND PLAINTIFF'S RESPECTIVE MOTIONS FOR SUMMARY JUDGMENT

McMahon, C.J.

    The issue in this FOIA case is straightforward – and fascinating

    And it is an issue of first impression in this Circuit, and quite possibly anywhere.

    In dispute are five email chains, only portions of which have been disclosed in response to Johnson's FOIA request.

    The CIA's Office of Public Affairs (CIA/OPA) is a participant on each of the emails.

    In those emails, CIA/OPA divulged [REDACTED] certain classified information to reporters who, as far as the court knows, are not legally authorized to have access to that classified information. In response to plaintiff's FOIA request, CIA has turned over the reporters' emails to CIA, but not CIA's responses. It argues that the information it is not disclosing is protected by various exemptions to FOIA disclosure.

    Plaintiff's position is that he is just as entitled to this information as any other reporter now that it has been voluntarily disclosed by CIA to certain members of the press– who are, in addition, members of the public. Plaintiff does not contest that the withheld information would not be exempt from disclosure if it had not been divulged to his competitors; rather, he argues that CIA has, by disclosing to reporters not authorized to have access to this classified information, waived its right to rely on the relevant exemptions.

1

▁▁▁▁▁▁ Emails

Four of the email chains concern one ▁▁▁▁▁▁

The information disclosed by CIA/OPA to three national-security journalists, from three prominent national publications,[1] concerned three topics: ▁▁▁▁▁▁ This information will hereinafter be referred to as "the withheld information."

All of this information is highly classified, as it tends to confirm that ▁▁▁▁▁▁ Therefore, all of it would ordinarily be protected from FOIA disclosure under both Exemption 1 (for classified information) and Exemption 3 (on the ground that the National Security Act and the CIA Act bar disclosure ▁▁▁▁▁▁

Nonetheless, it is undisputed that CIA disclosed the withheld information to the three journalists.

The information was allegedly divulged pursuant to a program or practice at CIA that ▁▁▁▁▁▁

---

[1] Siobhan Gorman from the Wall Street Journal, David Ignatius from the Washington Post, and Scott Shane from the New York Times. (Govt. Memo at 2, Sun Decl. Exs. C-G)

2

[REDACTED] I gather that the program or practice is no longer operative, or has at the very least been modified, albeit in ways that have not been disclosed to the court.

In this particular case, senior CIA officials authorized the disclosure of classified information to reporters who were not cleared to receive it [REDACTED]

CIA's position is that its side of the email exchanges—in which it [REDACTED] —cannot be further disclosed [REDACTED]

All that is undoubtedly true, but it is beside the point. The issue for the court is: has CIA waived the right to rely on Exemptions 1 and 3 by selectively disclosing classified information [REDACTED] to certain "trusted" reporters.

[REDACTED] Emails

The fifth email exchange was between OPA and Siobhan Gorman of the Wall Street Journal.

[REDACTED]

CIA/OPA's side of the email exchange would, if disclosed, [REDACTED]

[REDACTED]

3

Again, the justification for why the CIA shared confidential information with the WSJ reporter, while interesting, appears to be irrelevant.

The issue is whether the CIA waived its right to rely on otherwise applicable exemptions to FOIA disclosure by admittedly disclosing information selectively to one particular reporter.

## Standards for Summary Judgment

Summary judgment is the typical method for disposing of cases challenging a Government agency's FOIA response. *See Center for Biological Diversity v. U.S. Marine Corps*, No. 00 Civ 2387, 2003 WL 26121134, at *3 (DDC Aug. 21, 2003) (citing Fed.R.Civ.P. 56(c); *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983); *Founding Church of Scientology v. NSA*, 610 F 2d 824, 836 (D.C. 1979); *Nat'l Cable Television Ass'n, Inc. v. FCC*, 479 F 2d 183, 186 (D.C. Cir 1973). In this case as in any other, the standards applicable to a motion for summary judgment outlined in Fed. R. Civ P 56(c) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) are applicable.

A district court reviews the agency's FOIA determination *de novo*, *Wilner v NSA*, 592 F 3d 60, 69 (2d Cir. 2009); *see also* 5 U.S.C. § 552(a)(4)(B). Exemptions are to be narrowly construed, and all doubts as to the applicability of the asserted FOIA exemption are to be resolved in favor of disclosure. *Halpern v. FBI*, 181 F 3d 279, 287 (2d Cir. 1999); *Wilner, supra.*, 592 F. 3d at 69.

An agency resisting disclosure of records responsive to a FOIA request bears the burden of demonstrating that the asserted FOIA exemption applies. *Wilner*, at 68-69 However, affidavits or declarations…giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney v. Dept. of Justice*, 681 F. 3d 61, 72 (2d Cir. 2012). Summary judgment in the agency's favor is appropriate where

> …the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith.

*Wilner, supra.*, 592 F. 3d at 73.

In the national security context, agency declarations are entitled to substantial deference. *CIA v. Sims*, 471 U.S. 159, 179; *ACLU v. Dept of Justice*, 681 F. 3d 61, 72 (2d Cir. 2012). Nonetheless, FOIA empowers a district court to conduct *in camera* review of documents withheld pursuant to a FOIA exemption (*see* 5 U.S.C. § 552(a)(4)(B)); although when the responding agency is the CIA, in camera review of documents is discouraged, and the statute directs the court to "to the fullest extent practicable, determine issues of fact based on sworn written submissions of the parties." 50 U.S.C. §431 (f)(2)

4

In this case, neither deference nor *in camera* review is implicated, because the applicability of these exemptions to the withheld information is not in dispute.

Discussion

CIA asserts that the information it has withheld falls within both Exemption One and Exemption Three to disclosure.

Exemption One to FOIA exempts from disclosure records that are "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order." 5 U.S.C. § 522(b) (1).

Exemption Three to FOIA exempts from disclosure records and information "specifically exempted from disclosure by statute." 5 U.S.C. § 552 (b) (3). The National Security Act, as amended, 50 U.S.C. § 403-1(i) (1), provides that "the Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure " This is an exempting statute within the meaning of Exemption 3. *See, e.g., American Civil Liberties Union v Department of Justice*, 681 F.3d 61, 72-73 (2d Cir. 2012) (citing *Larson v. DOS*, 565 F. 3d 857, 865 (D.C. Circ. 2009)). So is Section 6 of the CIA Act, 50 U S.C. §403(g). CIA invokes these statutes in this case

The applicability of the two exemptions to the withheld information cannot be doubted. In fact, it is not even in dispute. There is ample evidence in the record that the information contained in the non-disclosed portions of the email chains is properly classified, and plaintiff does not argue otherwise. Nor does plaintiff contest the fact that the material he seeks falls within the exempting statutes.

But the protection of both of these exemptions can, like any other legal right, be waived. "Voluntary disclosures of all or part of a document may waive an otherwise valid FOIA exemption." *Dow Jones & Co., Inc., v. Dept. of Justice*, 880 F. Supp. 145, 150-51 (S.D.N.Y. 1995) (citing *Mobil Oil Corp., v. EPA*, 879 F 2d 698, 700 (9th Cir. 1989) and *Ashfar v. Dept. of State*, 702 F. 2d 1125, 1133 (D.C. Cir. 1983); *see also, New York Times v Department of Justice*, 756 F. 3d 100 (2d Cir. 2014). Here, CIA has admittedly disclosed the information sought by plaintiff to reporters, and has done so of its own volition. At first blush, it would seem that CIA has waived its right to rely on the exemptions.

Of course, for the protections of the exemptions to be waived, the FOIA request must be for (1) specific information, (2) that has already been disclosed to the public, and (3) by someone authorized to make such disclosure. *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009). But the plaintiff seeks only disclosure of the emails that were admittedly sent to other reporters, after OPA was authorized by senior officials to do so. He has not asked for any other information. So CIA cannot argue that plaintiff is trying to obtain information in excess of that which was

5

previously disclosed, or that the disclosure was unauthorized. As a result, the key holding in *Military Audit Project v. Casey*, 656 F. 2d 724 (D.C. Circ. 1981)—in which the court held that the fact that "some information about the Glomar Explorer project had been leaked or officially disclosed by Government officials" did not mean that "all of it must be released in response to FOIA requests"—has no applicability here.

Nonetheless, CIA claims that it has not waived FOIA protection in either of these instances. It relies on a single 36 year old case.

In *US v. Phillipi*, 655 F. 2d 1325 (DC Cir. 1981), the court was faced with an attempt by the CIA to suppress publicity about a notorious project– the Glomar Explorer project, an effort to raise a Soviet submarine from the ocean floor (and the source of the so-called "Glomar" exemption, under which the CIA frequently—though not in this case—asserts that it can neither confirm nor deny the existence of records relating to the subject matter of the FOIA request).

The project was exposed when a handful of armed men overwhelmed a guard, slipped past a sophisticated electronic alarm system, and burned their way into a safe containing a document that described the project. What the court described as "somewhat garbled information about the Glomar Explorer" project "somehow ended up" being published by the Los Angeles Times. CIA responded to the leak by briefing a dozen or so of the nation's most prominent print and electronic news editors about the project, in exchange for promises that they would not publish accounts of the operation— at least, not until someone else did so. An impressive list of news organizations agreed to hold the story on that basis. Jack Anderson did not. Once he published, everyone did

Reporters then tried to figure out why the CIA "had undertaken the apparently hopeless task of trying to bottle up the story once it had reached the American press." Harriet Phillippi, Washington correspondent for Rolling Stone, filed a FOIA request seeking "all records related to attempts by CIA personnel . . . to persuade any members of the news media not to broadcast, write, publish, or in any other way make public the events relating to the activities of the Glomar Explorer." CIA refused to produce any documents, and Phillippi sued. The case wended its way up and down from the district court to the Circuit and back to the district court again; ultimately CIA disclosed some documents that were responsive to the request. However, it deleted "sensitive details" about the Glomar Explorer program from some released documents. Those details fell into three categories: transcripts of telephone conversations between CIA Director William Colby and members of the press; CIA descriptions of conversations between CIA officials and members of the press; and CIA memoranda recounting conversations between and among CIA officials. For our purposes, only the first two categories are relevant. *Phillipi*, 655 at 1327-1328.

Relying largely on the decision in *Military Audit Project v Casey*, 656 F. 2d 724 (D.C. Circ. 1981), the D.C Circuit concluded that Exemption 3 barred disclosure of the information

6

sought, because disclosure of the withheld information "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." *Phillipi*, 655 at 1329. The Court held that disclosure of these "sensitive details" "might reveal the purpose of the Glomar Explorer project and the extent to which its goals were accomplished," as well as impair relations between the United States and "the country that was the target of the project." *Id.* Much of the district court's discussion—and much of the discussion in *Military Audit*—concerned a particular aspect of the Glomar Explorer case: the possibility that the CIA mighty have invented a "fallback cover story" for the project, and that releasing the documents might tend to confirm whether the original story, the "fallback cover story," or some story yet to surface, was in fact the true story behind the Glomar Explorer project. *Id.* at 1329-1330. As Plaintiff correctly points out, there is no "fallback cover story" that the CIA is trying to protect at issue here, so none of this discussion matters a whit.

However, insofar as is actually relevant to this case, the D.C. Circuit posited the following *hypothetical* scenario involving ". . . the other withheld documents, *those involving transcripts or memoranda relating to contacts between CIA officials and the press*" (emphasis added):

> First, there is the obvious possibility that the American press did not publish everything disclosed by the CIA at its confidential briefings. William Colby's entreaties may have been at least partially successful. If so, this case appears in much the same posture it would have had Colby been entirely successful. For had Colby been successful, a journalist who, like the appellant here, had not been briefed, might have filed a FOIA request similar to the one which the appellant litigates here. Such a journalist could have alleged as the appellants has in the present case that he merely sought to be treated on an equal basis with the other journalists who had been given confidential information about the project He could have pointed out as the appellant has in the present case that the CIA had provided the information at issue to other journalists who lacked security clearance and who did not promise to respect the secrecy of the information provided to them.

*Phillipi*, 655 at 1331. Obviously, the hypothetical posited by the court in *Phillippi* is exactly what is going on here

In response to its own hypothetical, the DC Circuit opined, albeit *in dicta*: "But such a hypothetical FOIA request would surely fail, for Exemption 3 could be successfully invoked by the CIA to bar release of the documents requested." *Id.* at 1332.

The court offered two justifications for this far-from-self-evident conclusion.

7

First, it said, "Neither we nor the appellant knows for sure that everything the CIA disclosed has in fact been printed. . . . If journalists voluntarily and patriotically abstained from publishing that information, disclosure of the documents requested by the appellant could lead a foreign intelligence analyst to information they [sic] would not otherwise have obtained." *Id.*

But the fact that journalists might not have published everything they were told does not address a waiver argument. Waiver is the voluntary relinquishment of a known right. In this case, the known right is for CIA to keep the public -all of it, every single member---from learning certain classified information that might reveal sources and methods. No third party can by its actions work a waiver on behalf of the CIA; only CIA can waive it, by disclosing that which it is permitted by law not to disclose.

In this case, CIA voluntarily disclosed to outsiders information that it had a perfect right to keep private. There is absolutely no statutory provision that authorizes limited disclosure of otherwise classified information to anyone, including "trusted reporters," for any purpose, including the protection of CIA sources and methods that might otherwise be outed. The fact that the reporters might not have printed what was disclosed to them has no logical or legal impact on the waiver analysis, because the only fact relevant to waiver analysis is: Did the CIA do something that worked a waiver of a right it otherwise had? The answer: CIA voluntarily disclosed what it had no obligation to disclose (and, indeed, had a statutory obligation *not* to disclose). In the real world, disclosure to some who are unauthorized operates as a waiver of the right to keep information private as to anyone else.

Second, the *Phillipi* court said:

> Without the disclosure of the documents demanded by the appellant, foreign analysts remain in the dark as to the provenience of the information appearing in published reports. Some of it may have come from Director Colby and other CIA officials, but no one who was not privy to the CIA disclosure can know for sure which information came from CIA sources and which information originated elsewhere unless the appellant receives the documents she requests. Release of those documents would thus not be as innocuous as the appellant would have us believe.

*Phillipi*, 655 at 1332. CIA specifically invokes this aspect of the *Phillippi* holding here



Indeed it would. But the second *Phillipi* justification depends for its force on there being some possibility that CIA is only one of several sources for the information sought by the FOIA request. Here, there is no possibility that one "could not know for sure which information came from CIA sources." The CIA's voluntary disclosure came in the form of an email sent by its in-house Office of Public Relations; and the plaintiff here seeks only those emails that emanated from CIA/OPA -- not any other information. The *Phillipi* court's discussion of possible

8

alternative sources of information (which comes in the context of its discussion of fake cover stories) is, therefore, entirely irrelevant and adds nothing to the analysis

Astonishingly, the *Phillipi* court never once mentions the doctrine of waiver in discussing its hypothetical. Waiver is the issue here, specifically: Does CIA's admitted selective disclosure of certain information to some members of the public waive its right to rely on Exemptions One and Three when another member of the public files a FOIA request seeking exactly the same information (the identical emails, word for word) from exactly the same source (there being none other than CIA) Contrary to the Government's suggestion, *Phillipi* does not announce that limited disclosure of information that the CIA is not supposed to disclose can never operate as a waiver. It does not authorize the Government to distinguish between "trusted journalists" and other journalists.[2] It simply does not address either the facts facing this court or the legal implication of those facts at all.

The Government's memoranda of law in support of its motion are entirely inadequate. Its opening brief does not even acknowledge what it had to know was the only issue of substance in this case; and its reply brief does not adequately come to grips with the issue of waiver - notably, the problems with the analysis in *Phillipi*, a decision that is both unpersuasive and not binding on this court. The Government's effort to focus the Court's attention on the very real danger to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ only underscores the lack of wisdom of CIA's risky (and apparently discontinued) selective disclosure program.

Conclusion

The issue here is a serious one, and so are the possible consequences if the court were to conclude that CIA's limited disclosure to some members of the press operated as a waiver I suggest, therefore, that the Government go back and treat the question of waiver with the seriousness it deserves. A comprehensive discussion of the doctrine and an analysis of cases (especially FOIA cases) in which it was discussed is plainly called for especially now that this court has put the Government on notice that it finds *Phillipi* to be unconvincing. In particular, the court is eager to know whether any other court has discussed the possibility that Exemption 3 cannot be waived (I well know that Exemption 1 can be, but we have been unable to locate any case that discusses the possibility of the non-waivability of Exemption 3). The Government has access to a library of national security cases that the court could never locate; I would be very surprised to learn that none of them addresses the issue of waiver by limited disclosure, or, perhaps, whether the fact that third parties do not further publish the classified information that has been disclosed to them has some impact on conduct that would otherwise constitute waiver

The Government has until January 31 to provide the court with a better reply to Plaintiff's brief in opposition to the motion. There is no need to reiterate the reasons why the exemptions apply; the only open issue is whether they have been waived. I must give Plaintiff an

---

[2] I suppose it is possible that the Government does not consider members of the press to be part of "the public." I do

opportunity to respond to any unclassified information in the Government's response; it has until February 15.

This constitutes the decision and order of the Court.

Dated: January 19, 2018

_____
Chief Judge

BY HAND TO THE GOVERNMENT IN UNREDACTED FORM

BY ECF IN REDACTED FORM TO ALL COUNSEL